834 So.2d 6 (2002)
STATE of Louisiana, Appellee
v.
Jeffery D. HUNTER, Appellant.
No. 36,692-KA.
Court of Appeal of Louisiana, Second Circuit.
December 20, 2002.
H. Paul Garner, Homer, G. Paul Marx, Lafayette, for Appellant.
Richard Ieyoub, Attorney General, Walter E. May, Jr., District Attorney, Daniel W. Newell, Assistant District Attorney, for Appellee.
Before BROWN, KOSTELKA and DREW, JJ.
BROWN, C.J.
Defendant, Jeffery Hunter, was convicted by a jury of the second degree battery of Jason Friemel, a violation of La. R.S. *7 14:34.1. The district court sentenced defendant to three years at hard labor. Defendant appeals his conviction and sentence. For the following reasons, we affirm.[1]

Facts
In the early morning hours of June 4, 2000, in a park in Haynesville, Louisiana, defendant hit Jason Friemel in the face, knocking him to the ground. Friemel, who was smaller than defendant, lay unable to defend himself while defendant kicked him in the head and chest and stomped him on his back.
Christopher Bowman, D.J. Bailey, and Ryan Lewis loaded Friemel into his truck because he was limp and could not stand to help them. He could not speak any words on the way to the hospital and was unable to sit up straight. When the young men arrived at the Homer Hospital, they used a wheelchair to carry Friemel into the hospital.
By bill of information, on June 22, 2000, the state charged defendant with the offense of second degree battery. On November 27, 2001, a unanimous jury convicted defendant of the offense of second degree battery. After a pre-sentence investigation, on February 5, 2002, defendant was sentenced to three years at hard labor, with credit for time served; the trial court also ordered him to undergo a mental health examination and evaluation. This appeal follows.

Discussion
Sufficiency of the Evidence
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. State v. Nealy, 450 So.2d 634 (La.1984); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied, 544 So.2d 398 (1989).
Bowman, Bailey and Lewis testified that they knew Friemel and that after being beaten by Hunter, Friemel's eyes were closed, he was groaning, and was unaware of who was there and what was going on. He could not get up, sit up, or stand. They tried to slap Friemel in the face several times to rouse him, but to no effect.
A Haynesville police officer, Jason Willis, testified that he was called to the hospital; he observed a two to two and one-half-inch contusion on Friemel's head, other scrapes on his face, and a busted lip. He testified that taking a statement from Friemel took longer than usual, because Friemel "seemed kind of cloudy, kind of dazed at the time." He interviewed other witnesses to the event, who testified at trial.
Dr. John Smith testified as an expert in family practice. He testified that he treated Friemel when he came to the hospital. At the time of Dr. Smith's evaluation at 3:00 a.m., Friemel was "alert and fairly well oriented." Dr. Smith testified that Friemel did not remember anything about the incident other than that he had gotten "beat up." According to Dr. Smith, Friemel "did not remember whether or not he was out or knocked out, if there was a loss of consciousness." He testified that *8 Friemel had a contusion and an abrasion on his right forehead, a laceration on his lip and complained of a headache. Although Friemel knew where he was at the time of the examination, he did not know how he had arrived at the hospital. Dr. Smith testified that Friemel had a Grade II concussion (more than a few minutes, less than an hour). He testified that a concussion could cause unconsciousness. He went on to state that there could be "a period of anywhere from a few seconds to where they are unresponsive up to a few minutes." The doctor further testified that he could not contradict witnesses who testified that Friemel was unconscious after the fight. Dr. Smith testified that Friemel's injuries could be characterized as "extremely painful," and that he gave him Toradol, the strongest non-narcotic pain reliever available, and then gave him a prescription for Darvocet, another pain reliever.
La. R.S. 14 § 34.1. Second degree battery
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both.
We find that the evidence presented here is legally sufficient to convict defendant of second degree battery. As previously stated, three witnesses saw the blows that knocked the victim down and saw defendant both punch and kick the victim's head. They testified that the victim had a head injury, his eyes were closed, he could not sit or stand by himself, and could not be roused, even with slapping. He had to be carried to the vehicle to go to the hospital and had to be put in a wheelchair to be taken into at the hospital. A physician testified that the victim had no memory of the events (other than that he had been in a fight) and no memory of being transported to the hospital. Although the victim was well-oriented when examined, the examination was over an hour after he had been brought to the hospital. The doctor testified that nothing in his examination would contradict witness testimony that the victim was unconscious. The doctor also testified that the injuries sustained would cause "extreme pain."
The testimony of the witnesses establishes both unconsciousness and extreme pain. Although something that Friemel said, either to defendant or Smith, may have precipitated the attack, the evidence clearly establishes that defendant Hunter threw the first punch and then continued punching and kicking Friemel after he was on the ground, unable to defend himself.
Second degree battery is a specific intent crime. State v. Fuller, 414 So.2d 306 (La.1982). The evidence must show that the defendant intended to "inflict serious injury." A rational trier of fact, hearing testimony of a fight culminating in kicks to the victim's head and body while the victim was down, could reasonably infer that defendant specifically intended to inflict serious injury to the victim.
Ineffective Assistance of Counsel
In his second assignment of error, Hunter urges ineffective assistance of *9 counsel for failure to file a motion to reconsider the sentence. As a remedy, he asked that the sentence be reviewed on appeal, rather than through post-conviction relief. Hunter is adverting to a post-conviction relief allegation of ineffective assistance of counsel, and the reinstatement of appellate review rights. We will review the sentence on appeal as requested.
The trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Thompson, 25,583 (La. App.2d Cir.01/19/94), 631 So.2d 555; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (1988); State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988).
Whether a sentence is too severe depends on the circumstances of the case and the background of the defendant. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Tuttle, 26,307 (La.App.2d Cir.09/21/94), 643 So.2d 304.
We find that the trial court adequately considered and articulated lengthy reasons for imposing a three-year hard labor sentence on defendant.
The trial court noted that the present offense was defendant's first felony conviction as an adult. He had a juvenile delinquency adjudication for simple battery, which also resulted in contempt of court proceedings. The trial court considered defendant's family and social history. His educational history included an expulsion from school in Haynesville in the ninth grade, and expulsion from the Claiborne Parish Alternative School for expressing gang activities in 1999. The trial court particularly noted that after the instant offense on September 9, 2000, defendant was arrested for yet another second degree battery; no prosecution was undertaken and no bill of information was filed because the victim did not press charges against him. The trial court articulated that the subsequent arrest for an identical offense indicated that there was an undue risk that defendant would commit another crime during any period of suspension of sentence. The trial court felt that defendant was in need of correctional treatment. The trial court observed the PSI's sentencing recommendation, which was that defendant receive the maximum statutory period of five years at hard labor.
The court adverted to deliberate cruelty to the victim, economic loss, previous involvement in similar offenses, a joint attack with another, possible victim provocation, and the unlikelihood (due to the victim's death) of any further involvement between the victim and defendant, and defendant's supportive family, as factors bearing on the sentence imposed. The trial court's articulation was more than adequate.
The sentence imposed is neither grossly disproportionate to the severity of the offense nor, under the totality of the circumstances, is it shocking to our sense of justice. There is no showing of an abuse of the district court's discretion. Therefore, the claim of constitutional excessiveness is without merit.
Failure to Advise of Post-Conviction Relief Time Limits
In his last assignment, defendant urges that at sentencing, the trial court *10 did not properly advise the him of the time period within which to apply for post-conviction relief. Upon review of the record, we find that the trial court did not advise defendant of time delays to apply for post-conviction relief; however, La.C.Cr.P. art. 930.8 C, which requires the trial court to inform the defendant of the limitations period for filing an application for post-conviction relief, is supplicatory language which does not bestow an enforceable right on an individual defendant. By this opinion, we advise defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922.
AFFIRMED.
NOTES
[1] Between the date of the instant injury and prior to trial, Friemel died in a separate and unrelated oilfield accident.