963 So.2d 1072 (2007)
STATE of Louisiana, Appellee
v.
Anthony Ray BARRETT, Appellant.
No. 42,303-KA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 2007.
*1074 Anthony Ray Barrett, Pro Se.
Louisiana Appellate Project, by Mary C. Hanes, for Appellant.
Paul J. Carmouche, District Attorney, John F. McWilliams, Dhu Thompson, Lea R. Hall, Jr., Assistant District Attorneys, for Appellee.
Before GASKINS, DREW and LOLLEY, JJ.
*1075 LOLLEY, J.
This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. The defendant, Anthony Ray Barrett, was convicted of simple burglary pursuant to La. R.S. 14:62. Thereafter, he was adjudicated a fourth felony offender. He was sentenced to 40 years at hard labor, with credit for time served, to run consecutively with any other sentence. Barrett was also ordered to pay restitution to the victim in the amount of $500.00. Barrett appeals his conviction and sentence, which we affirm for the following reasons.

FACTS
Barrett was charged by bill of information with simple burglary for the burglary of Southern Automotive Services ("Southern Automotive") in Shreveport, Louisiana, a felony offense in violation of La. R.S. 14:62. He was convicted after a jury trial. The state filed a multiple offender bill under La. R.S. 15:529.1, and Barrett was adjudicated a fourth felony offender after a multiple offender hearing. He was sentenced to 40 years at hard labor, with credit for time served, to run consecutively with any other sentence. In addition, Barrett was also ordered to pay restitution to Southern Automotive in the amount of $500.00. This appeal by Barrett ensued.

DISCUSSION
In his first assignment of error, Barrett argues that there was insufficient evidence to support his conviction for simple burglary. Specifically, Barrett maintains that the state failed to prove beyond a reasonable doubt that he had the specific intent to commit a theft or felony inside Southern Automotive, arguing that specific intent cannot be inferred from the fact that he was found hiding in the attic of the main building. Barrett asserts that he hid in the attic out of fear of the K-9 dogs and police officers and that no items were found missing from the premises. Barrett concludes that a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, would not have found him guilty of simple burglary, and thus, the verdict must be set aside. We disagree.
When issues are raised on appeal both as to the sufficiency of the evidence and one or more trial errors, the reviewing court first reviews the sufficiency claim. This is because the defendant may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if the evidence is constitutionally insufficient. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.04/02/97), 691 So.2d 347, writ denied, XXXX-XXXX (La.10/17/97), 701 So.2d 1333.
When considering the issue of sufficiency of evidence, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, XXXX-XXXX (La.02/28/96), 668 So.2d 1132. It is the role of the fact finder to weigh the respective credibility of the witnesses and, therefore, an appellate court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App. 2d Cir.08/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with other evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d *1076 Cir.05/08/96), 674 So.2d 1018, writ denied, XXXX-XXXX (La.11/15/96), 682 So.2d 760, writ denied, XXXX-XXXX (La.06/26/98), 719 So.2d 1048.
To convict an accused of simple burglary, the prosecution must prove there was an unauthorized entry of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein, other than as set forth in La. R.S. 14:60. La. R.S. 14:62; State v. Bullard, 29,662 (La. App. 2d Cir.09/24/97), 700 So.2d 1051.
The only contested issue in this case was whether Barrett entered Southern Automotive with the intent to commit a theft. Although intent is a question of fact, it need not be proved as a fact. State v. Robinson, 29,488 (La.App. 2d Cir.06/18/97), 697 So.2d 607, writ denied, XXXX-XXXX (La.12/12/97), 704 So.2d 1200. It may be inferred from the circumstances. State v. Kahey, 436 So.2d 475 (La.1983); State v. Robinson, supra. Moreover, it is not necessary that an actual theft occur. State v. Hall, 26,505 (La.App. 2d Cir.12/07/94), 647 So.2d 453. Flight and attempt to avoid apprehension are circumstances from which the jury may infer a guilty conscience. State v. Fuller, 418 So.2d 591 (La.1982); State v. Roberson, 40,809 (La.App. 2d Cir.04/19/06), 929 So.2d 789.
On October 8, 2005, police officers responded to a silent alarm that was triggered at Southern Automotive. The business establishment was locked and closed for business. Officer Robert Rivet of the Shreveport Police Department, one of the first responding officers, testified at Barrett's trial that he heard movement inside the store and called for the K-9 unit. Officer Joseph Dews testified that he observed a hole in the back of the building. He also testified that Sammy Goldman, Southern Automotive's manager, had to unlock the building so that the officers could begin their investigation. Goldman testified that he arrived at the scene to allow the police officers access into the building so that the officers could begin their investigation.
The officers gave loud verbal warnings to the perpetrator, indicating that the K-9 units would soon enter. After no response, a K-9 dog went inside the building and led the officers into an attic space above the office area. Barrett was discovered in a back corner area, lying between two rafters with a plywood board on top of him. Officer T.G. Morrison advised him to show his hands, and after Barrett refused to comply, Off. Morrison ordered his K-9 dog to bite Barrett. The dog obeyed his command, causing Barrett to begin kicking and punching the dog. After Barrett followed the officer's verbal commands, he was placed under arrest. Barrett was led down from the attic space whereupon Goldman informed the arresting officers that Barrett was not an employee nor did he have permission to be inside the building. Thereafter, Barrett was advised of his Miranda rights. When the officers questioned Barrett as to whether he had heard their loud verbal warnings announcing their presence before they entered the building, he indicated that he had heard the warnings but chose to hide.
Goldman testified that Barrett did not have permission to be inside Southern Automotive. He further testified that there were valuable pieces of equipment inside the building, including hand tools, power tools, computers, and small electrical equipment that could easily be picked up and carried out. Goldman testified that after the burglary, he noticed that two tires had been removed from inside the building and left in a field. He had no explanation for the tires being in the field other than the burglary. Furthermore, he *1077 testified that the tires would have had to be removed for Barrett to gain entry into the building.
Additionally, we note that Barrett did not voluntarily surrender when the police officers gave verbal warnings announcing their presence. Instead, a K-9 dog had to be called out to locate Barrett, because he would not come out of hiding as requested by the police. Moreover, when ordered to do so, Barrett refused to show his hands. As a result, Off. Morrison ordered his K-9 dog to bite him, and Barrett retaliated by punching and kicking the dog.
In light of the circumstances, it was reasonable for a jury to infer that Barrett entered the store with the intent to commit a felony or theft. Thus, upon viewing the evidence in the light most favorable to the prosecution, it was reasonable for any rational trier of fact to find that the state proved all elements of simple burglary beyond a reasonable doubt. We conclude that this assignment is without merit.

Habitual Offender Proceedings
In his second assignment of error, Barrett argues that the trial court erred in denying his motion to quash the multiple bill of information and, from that, in finding him to be a quadruple offender. Specifically, he argues that the plea transcript for one of the predicate offenses was permanently missing, and, therefore, he was thwarted in his attempt to meet his burden of proof to show that his plea was involuntary.
Citing State v. Shelton, 621 So.2d 769 (La.1993), Barrett argues that a defendant is entitled to a transcript of a plea hearing to use in proving that his guilty plea was not made knowingly and voluntarily. In Shelton, supra, the issue was whether there was sufficient proof of a prior felony conviction under La. R.S. 15:529.1 where the state, at the habitual offender hearing, introduced a minute entry which stated the judge "gave the defendant his rights" and a well-executed guilty plea/waiver of rights form, rather than introducing the actual transcript of the plea colloquy.
The state's burden of proof in habitual offender proceedings under La. R.S. 15:529.1 is stated in Shelton, supra at 779-80:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
The Shelton court held that this new procedure would give appropriate significance to the presumption of regularity which attaches *1078 to judgments of conviction which have become final.
In the instant case, it was impossible for the state to produce the guilty plea transcript for Barrett's second felony conviction in Docket No. 187,036. As a result, the state produced a certified copy of the bill of information with Barrett's fingerprints and a certified copy of the trial court minutes. The certified court minutes reflect that Barrett was represented by counsel and was Boykinized. At his habitual offender proceeding, Barrett urged, however, that the minutes of the guilty plea did not affirmatively show that he was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers as required by Boykin, supra. After hearing arguments from both sides and reviewing the documentation presented by the state, the trial court ruled that the state had satisfied its burden of proof and denied Barrett's motion to quash. This was not in error.
Barrett admits that the state met its initial burden of proof with the introduction into evidence of the certified copies of the bill of information and minute entry, which showed he pled guilty to simple burglary after being advised of his rights per Boykin. Thus, the sole issue to be addressed is whether the unavailable transcript was the only means by which Barrett could have met his burden of proving that his plea was involuntary.
A defendant can attempt to meet his burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea with a transcript, with testimony regarding the taking of the plea, or with other affirmative evidence. Shelton, supra at 779. Only when this is accomplished will the state be required to establish the constitutionality of the previous conviction. State v. O'Neal, 34,814 (La.App. 2d Cir.10/12/01), 795 So.2d 1292.
Pursuant to Shelton, the introduction of the guilty plea transcript was not the only means Barrett had to attack the habitual offender charges against him. Barrett could have testified regarding the taking of his guilty plea or presented other affirmative evidence, such as a guilty plea/waiver of rights form, showing some defect in the proceeding. Thus, he was not precluded from offering evidence other than the plea transcript that became permanently unavailable. Moreover, because Barrett failed to object to the introduction of the court minutes or offer any affirmative evidence, he failed to meet his burden. Thus, the trial court did not err in denying Barrett's motion to quash the multiple bill of information and adjudicating him a fourth felony offender. This assignment is without merit.

Sentencing
In his final assignment of error, Barrett argues that the forty-year sentence imposed on him as a habitual offender is excessive under the circumstances of this case. He argues that his sentence is excessive given that he has only been convicted of burglaries and one other property-related crime. He further argues that he is a non-violent, petty criminal and the forty-year sentence imposed is grossly disproportionate to the seriousness of his crimes and does not warrant such an excessive sentence. We disagree.
In reviewing a sentence for excessiveness, this court must first determine whether there has been compliance with La. C. Cr. P. art. 894.1 in the imposition of sentence. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not a rigid or mechanical compliance with its provisions. *1079 State v. Price, 40,437 (La.App. 2d Cir.01/25/06), 920 So.2d 389. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App. 2d Cir.04/02/97), 691 So.2d 864.
A second inquiry is made to determine whether the sentence is too severe given the circumstances of the case and the defendant's background. If it is a needless imposition of pain and suffering and is grossly disproportionate to the seriousness of the offense so as to shock one's sense of justice, the sentence is considered unconstitutionally excessive as violative of La. Const. art. 1, § 20. Both inquiries must be made to determine if the sentence imposed is proper. State v. Lobato, 603 So.2d 739, 751 (La.1992).
A trial court has broad discretion to sentence within the statutory limits. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983); State v. Dunn, 30,767 (La.App. 2d Cir.06/24/98), 715 So.2d 641. Absent a showing of manifest abuse of that discretion, this court may not set aside a sentence as excessive. State v. Guzman, XXXX-XXXX (La.05/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App. 2d Cir.05/12/04), 873 So.2d 939.
Before imposing the sentence, the trial court ordered a presentence investigation report (the "PSI") and carefully reviewed the sentencing guidelines as required by La. C. Cr. P. art. 894.1. The trial court observed that Barrett had an extensive criminal record, including prior convictions for armed robbery, simple kidnaping, and simple escape in 1982. He was also convicted of simple burglary in 1986, other numerous burglaries and some misdemeanors. Most significantly, the trial court noted that Barrett was on parole at the time he committed the instant offense.
Moreover, Barrett's social history, as outlined in the PSI, provides little explanation for his extensive criminal record. In the report, Barrett suggests that he had a relatively normal childhood and was raised in a good home. Additionally, Barrett has no history of mental illness or serious drug use. Nonetheless, Barrett is a career criminal and has admittedly never held any long-term employmentother than crime, that is.
Barrett's sentence is not too severe given the sentencing statutes and his criminal background. After determining the sentencing range of penalties under the habitual offender law to be 20 years to life imprisonment at hard labor for a fourth felony offender, the trial court held discussions with both sides and concluded that a forty-year sentence at hard labor was appropriate for Barrett. Thus, in light of the circumstances, the sentence is not grossly disproportionate to the seriousness of the offense so as to shock the sense of justice. We find no error by the trial court on this issue.

CONCLUSION
For the foregoing reasons, Anthony Ray Barrett's conviction and sentence are affirmed.
AFFIRMED.