972 So.2d 1207 (2007)
STATE of Louisiana, Appellee
v.
Frank E. BELL, Appellant.
No. 42,394-KA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2007.
*1208 Paula C. Marx, Louisiana Appellate Project, for Appellant.
Paul J. Carmouche, District Attorney, John Ford Mcwilliams, Jr., Damon Kervin, Assistant District Attorneys, for Appellee.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
GASKINS, J.
The defendant, Frank E. Bell, was convicted of simple burglary. He was then found to be a fourth felony offender and sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant appealed. For the following reasons, we affirm the conviction and sentence.

FACTS
On the morning of June 14, 2004, Dr. Russell Hennessy was contacted by his *1209 security company and informed that the silent alarm in the separate garage at his residence had been triggered. He requested that the police be called. He also asked his girlfriend, Candice McWaters, to go to the residence.
Ms. McWaters arrived at the scene and surmised that someone was still inside the building. A police officer arrived soon after. Eventually, backup officers and a 9 officer arrived at the residence.
The garage was used to store a 1998 Chevy Astro van, a 1971 Corvette Stingray, and a 1995 Corvette, as well as household items. A bag was lying outside the building containing tools and other things belonging to Dr. Hennessy. The bag had been used to store "t-tops" to one of the vehicles. A bicycle was lying close to the bag. The door to the building was locked.
After Dr. Hennessy arrived, the building was opened with his key. The K-9 officer entered the building and ordered the intruder to come out. After several warnings, the dog was released. The animal found the defendant hiding under boxes and bedding that had been stored in the building. The dog bit the defendant
The defendant was arrested and charged with simple burglary. A sanity commission was appointed and the defendant was found not competent to stand trial in 2004. In 2005, the defendant was determined to be competent to stand trial. He was tried by a jury and found guilty as charged. A motion for post verdict judgment of acquittal was denied by the trial court. A multiple offender bill of information was filed against the defendant and, after a hearing, he was adjudicated a fourth felony offender. He was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
The defendant appealed, arguing that the evidence was insufficient to prove that he had the requisite specific intent to commit the offense of simple burglary. He also argues that, under the exceptional circumstances of this case, the life sentence is excessive.

SUFFICIENCY OF THE EVIDENCE
The defendant argues that the evidence was insufficient to support his conviction for simple burglary. He urges that the prosecution failed to prove beyond a reasonable doubt that he had specific intent to commit a theft or felony inside Dr. Hennessy's garage. The defendant contends that there was no physical evidence linking him to Dr. Hennessy's property found outside the garage. The defendant argues that someone else may have been in the area who could have taken the items out of the building. This argument is without merit.

Legal Principles
When considering the, issue of sufficiency of evidence, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, XXXX-XXXX (La.2/28/96), 668 So.2d 1132; State v. Barrett, 42,303 (La. App.2d Cir.8/15/07), 963 So.2d 1072.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.2/5/99), 737 So.2d *1210 747. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by the evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Barakat, 38,419 (La. App.2d Cir.6/23/04), 877 So.2d 223. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Barakat, supra.
When circumstantial evidence is used to prove the commission of an offense, the provisions of La. R.S. 15:438 mandate that, assuming every fact to be proved that the evidence tends to prove, every reasonable hypothesis of innocence must be excluded in order to convict. The provisions of La. R.S. 15:438 do not establish a separate standard from the Jackson standard, but rather provide a helpful methodology for determining the existence of reasonable doubt; ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Morris, 41,651 (La.App.2d Cir.12/13/06), 945 So.2d 212, writ denied, XXXX-XXXX (La.9/21/07), 964 So.2d 331. In circumstantial evidence cases, this court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Rather, this court, evaluating the evidence in the light most favorable to the prosecution, determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia, supra. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
To convict an accused of simple burglary, the prosecution must prove there was an unauthorized entry of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in La. R.S. 14:60. La. R.S. 14:62. To support a conviction of simple, burglary under La. R.S. 14:62, proof of the defendant's presence in a building by means of an unauthorized entry is not alone sufficient. The prosecution must also prove beyond a reasonable doubt the intruder's intent to commit a theft or felony therein. State v. Jacobs, 504 So.2d 817 (La.1987).
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Wright, 36,635 (La.App.2d Cir.3/7/03), 840 So.2d 1271. Although intent is a question of fact, it need not be proved as a fact. It may be inferred from the circumstances. Moreover, it is not necessary that an actual theft occur. Flight and attempt to avoid apprehension are circumstances from which the jury may infer a guilty conscience. State v. Barrett, supra. Displacement of the victim's possessions may be indicative of the specific intent to commit a theft. State v. Wright, supra.

Discussion
The garage where the defendant was found was approximately 50 feet from the residence in an open field. After Ms. McWaters and Corporal Kevin Alderman *1211 of the Shreveport Police Department arrived, Ms. McWaters was facing the garage talking to the officer. She saw the defendant peek out the door of the garage and lean around the corner of the building.
Corporal Alderman testified that he saw the bushes move and thought that someone was still inside the building. He went around the garage, and looked across an open field, but did not see anyone. He observed that the grass around the building was tall and was bent under the door, indicating that someone had recently entered the building. After the K-9 officer and other backup officers arrived, the police dog was sent into the building and found the defendant hiding inside.
Sergeant Mark Sharbono of the Shreveport Police Department testified that he handcuffed the defendant and read him his Miranda rights. The defendant was informed that he was being arrested for simple burglary. The defendant stated that he was staying in the garage and did yard work around the residence. Both Dr. Hennessy and Ms. McWaters testified that the defendant was not staying in the garage, did not do yard work there, and did not have permission to be in the building. They stated that they had never seen the defendant before that day. Dr. Hennessy identified the items found outside the building as belonging to him.
The state proved through direct and circumstantial evidence that the defendant made an unauthorized entry into the garage and had the specific intent to commit a theft inside the garage. Dr. Hennessy and Ms. McWaters stated that the defendant did not have permission to be in the building. The direct evidence proves that the defendant made an unauthorized entry into the building. The jury apparently believed the statements of Dr. Hennessy and Ms. McWaters and discredited the defendant's statement to police that he was staying in the garage.
Possessions stored inside the building were found just outside the building and Dr. Hennessy testified that he did not put them there or ask anyone to put them there. The defendant's displacement of Dr. Hennsessy's property indicates his specific intent to commit a theft in the garage.[1]
The defendant contends that because no one saw him put the items outside the garage, there is no proof that he did it. The timing of the silent alarm, combined with the items placed outside the garage and the defendant's hiding inside, all lead to the reasonable conclusion that it was the defendant who committed the theft of the items.
The defendant argues that Corporal Alderman's testimony about seeing the bushes moving was evidence that someone else could have been there, and that the unknown person could be responsible for taking Dr. Hennessy's possessions from the garage. However, Corporal Alderman testified that he looked around the garage and the open field and could not find anyone else. Other law enforcement officers *1212 who were present at the scene testified that someone running away would have been easily seen in the field where the garage was located. No other person was observed.
In addition to bagging and transporting Dr. Hennessy's property outside the garage, contemporaneously with the alarm being triggered, the defendant's other actions also support a guilty verdict. The defendant peered around the corner of the garage to surveil the position of the police. The defendant fled back inside the garage, locked the door, and hid. The defendant then gave a false statement in an attempt to explain his presence in the garage. Sufficient evidence was presented for the jury to conclude, beyond a reasonable doubt, that the defendant was guilty of every essential element of simple burglary.

EXCESSIVE SENTENCE
The defendant argues that his mandatory life sentence as a habitual offender is excessive. He contends that he is exceptional due to his mental illness, history of substance abuse, history of non-violent offenses, and limited mental capacity. This argument is without merit.

Legal Principles
The defendant was adjudicated a fourth felony offender. At his multiple offender hearing, the state proved that the defendant pled guilty to attempted simple burglary in December 1990, simple burglary in November 1993, and simple burglary of an inhabited dwelling in June 1998. He was convicted by a jury of the present offense of simple burglary. In sentencing multiple offenders, La. R.S. 15:529.1(A)(1)(c)(ii) provides in pertinent part:
A. (1) Any person who, after having been convicted within this state of a felony . . . thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
(ii) If the fourth felony and two of the prior felonies are felonies . . . punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. [Emphasis supplied.]
The defendant's previous and present convictions of simple burglary and his prior conviction of simple burglary of an inhabited dwelling all carry a maximum sentence of twelve years at hard labor. Therefore, a life sentence, without benefit of parole, probation, or suspension of sentence in the present case was mandatory.
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. State v. Johnson, XXXX-XXXX (La.3/4/98), 709 So.2d 672.
A trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality. While the classification of a defendant's instant or prior offense should not be discounted, this factor has already *1213 been taken into account under the Habitual Offender Law for third and fourth offenders. State v. Johnson, supra.
To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Johnson, supra.
When determining whether the defendant has met his burden of proof by rebutting the presumption that the mandatory minimum sentence is constitutional, the trial judge must also keep in mind the goals of the Habitual Offender Law, which include the deterrence and punishment of recidivism. State v. Johnson, supra. If the sentencing judge finds clear and convincing evidence which justifies a downward departure from the minimum sentence, he is not free to sentence the defendant to whatever sentence he feels is appropriate under the circumstances. In stead, the judge must sentence the defendant to the longest sentence which is not constitutionally excessive. The court must also articulate specific reasons why the sentence imposed instead of a mandatory minimum is the longest sentence which is not excessive under the Louisiana Constitution. State v. Johnson, supra.

Discussion
The defendant argues that the mandatory life sentence in this case is constitutionally excessive and the trial court should have made a downward departure in sentencing. The defendant claims that he is exceptional because of his history of mental illness, history of substance abuse, history of non-violent offenses, and his limited mental capacity. The defendant also claims the sentence is excessive because he did not cause any physical harm or monetary loss. We find that there is no justification in this case for a sentence less than the mandatory sentence required by the Habitual. Offender Law. The defendant did not present any evidence to show that his circumstances were exceptional or that he was the victim of the legislature's failure to assign sentences meaningfully tailored to his culpability, the gravity of the offense, and the circumstances of this case.
The defendant argues that his prior convictions were non-violent. However, State v. Johnson, supra, rejected that factor as a major reason for a lesser sentence. The defendant's prior felony convictions show that he is a career criminal; the Habitual Offender Law was intended to punish and deter recidivism.[2]
Because the defendant had previously been found incompetent to stand trial, the court was aware of the defendant's history of mental, illness and limited mental capacity. However, no, evidence was presented to indicate that the mental illness *1214 caused the defendant to commit the offense. The record shows that at the time of the offense, the defendant's mental faculties were sufficient for him to try to avoid apprehension and to formulate an excuse for his unauthorized presence in the garage. Because the defendant has not shown that his case is exceptional and warrants a rare departure from the mandatory minimum sentence under the Habitual Offender Law, the trial court properly sentenced the defendant to the mandatory life sentence in this case.

ERROR PATENT
A review for error patent reveals that the trial court failed to advise the defendant at sentencing that he has two years from the time of finality of his conviction and sentence to seek post conviction relief as required by La.C.Cr.P. art. 930.8. The statute contains supplicatory language which does not bestow an enforceable right on an individual defendant. State v. Hunter, 36,692 (La.App.2d Cir.12/20/02), 834 So.2d 6. Furthermore, this defect has no bearing on whether the sentence is excessive and, thus, is not grounds to reverse the sentence or to remand the case for resentencing. State v. Ferrell, 26,649 (La. App 2d Cir. 12/7/94), 647 So.2d 427. Therefore, the defendant is advised by this opinion that no application for post conviction relief, including applications which seek out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. C.Cr.P. arts. 914 and 922.

CONCLUSION
For the reasons stated above, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] The facts of this case are distinguishable from those in State v. Jacobs, 504 So.2d 817 (La.1987) and State v. Wright, supra. In Jacobs, the defendant and his brother entered an unoccupied apartment to eat and sleep. There was no evidence that they disturbed any of the contents of the dwelling. In Wright, the defendant was observed entering a house that was being remodeled. There was no showing that the defendant disturbed anything in the house. In those cases, there was no showing of the requisite specific intent to commit a felony or theft once inside the structures.
[2] The record contains a "rap sheet" that shows, in addition to the convictions contained in the habitual offender bill, the following convictions: 1981-simple burglary; 1984-aggravated assault; 1988-criminal trespass; and 1990-simple battery. Other charges showing dismissal or no disposition include: 1983-driving while intoxicated; 1986-attempted simple burglary; 1988-theft, simple criminal property damage; 1990-possession of drug paraphernalia, disturbing the peace, felony property damage; 1991-criminal trespass; 1996-entering and remaining; and 2003-simple criminal property damage.