PITMAN, J.
|! Defendant Brandon Lee Gage was charged with battery of a police officer, a violation of La. R.S. 14:34.2(B)(2). A jury found Defendant guilty as charged. A motion for post-judgment verdict of acquittal was filed, but was denied. Defendant was adjudicated as a second felony offender and sentenced to eight years’ imprisonment, without benefit of probation or suspension of sentence, and was ordered to pay court costs through the inmate banking system. Defendant filed a timely motion to reconsider sentence, which, was denied. This appeal followed. For the following reasons, Defendant’s conviction and sentence, as amended, are affirmed.

FACTS

On March 29, 2012, Defendant was in jail at the Caddo Correctional Center (“CCC”). Detective Michael Escude (“Es-cude”) was working as the lone security deputy in housing unit Alpha when he heard disruptive noises coming from one of the top cell areas in the housing unit. Escude determined the noise was coming from Defendant’s cell and could see Defendant standing at the door of the cell yelling to someone in the day room on the level below. Escude went to Defendant’s cell to tell him to stop causing the disturbance and to tell him that he had lost his recreation period privileges that evening because of his actions.
Defendant began cursing Escude and denied that he was misbehaving. Defendant spat on the floor in front of Escude, who told Defendant to get dressed to go to lockdown. Defendant used profane language, but eventually walked out of his cell and headed toward the lockdown cell with | ^Escude following approximately 10-15 feet behind him. When they reached the lockdown cell, Escude had the Defendant step aside in order to unlock the cell. As he did, Defendant lunged at him in an aggressive manner. A fight ensued and Defendant made several attempts to hit Escude, landing one blow to the right side of Escude’s face. A camera on that tier of the housing unit recorded the incident from approximately 150 feet away.
Defendant was charged with violating La. R.S. 14:34.2(B)(2), battery of a police officer. A jury trial was held on June 26, 2012, and Escude testified for the state. The video of the event was played at the trial, narrated by Escude. Defendant took the stand in his own defense and claimed that he was acting in self-defense when the incident occurred. No other witnesses testified. The jury rendered a verdict of guilty as charged.
Defendant filed a motion for post-verdict judgment of acquittal, which was denied. The state then filed a habitual offender bill of information against Defendant. On July 20, 2012, he was adjudicated as a second felony offender and sentenced to eight years’ imprisonment without benefit of probation or suspension of sentence. He filed a timely motion to reconsider sentence, which was denied. This appeal ensued.

DISCUSSION

Assignment of Error Number One (verbatim): There was insufficient evidence to prove that Brandon Lee Gage was guilty beyond a reasonable doubt of battery of a police officer.
Defendant argues that the state failed to prove that he had the intent to commit a battery on Escude and claims that he was defending himself against Escude by using reasonable force to end Escude’s battery.
*487 |sThe state responds that Defendant failed to show that his actions were necessary or in self-defense.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert, denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La. App.2d Cir.1/9/08), 974 So.2d 181, tvrit denied, 08-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 09-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La. App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its 14sufficiency. State v. Speed, 43,786 (La. App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 09-0372 (La.11/6/09), 21 So.3d 299.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact,- is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 .(La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So'.2d 219, writ denied, 06-1083 (La.11/9/06), 941 So.2d 35.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert, denied, 531 U.S. 840, 121 S.Ct. 104,148 L.Ed.2d 62 (2000).
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La.1987); State v. Adkins, 39,724 (La.App.2d Cir.6/29/05), 907 So.2d 232, writ denied, 06-2514 (La.5/4/07), 956 So.2d 607.
|,^Battery is defined as the intentional use of foree or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another. La. R.S. 14:33.
La. R.S. 14:34.2 defines the crime of battery of a police officer and states in pertinent part as follows:
A. (1) Battery of a police officer is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is *488 a police officer acting in the performance of his duty.
(2) For purposes of this Section, “police officer” shall include commissioned police officers, sheriffs, deputy sheriffs, marshals, deputy marshals, correctional officers, federal law enforcement officers, constables, wildlife enforcement agents, state park wardens, and probation and parole officers.
(3) For purposes of this Section, “battery of a police officer” includes the use of force or violence upon the person of the police officer by throwing feces, urine, blood, saliva, or any form of human waste by an offender while the offender is incarcerated by a court of law and is being detained in any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house, or detention facility.
B. (1) Whoever commits the crime of battery of a police officer shall be fined not more than five hundred dollars and imprisoned not less than fifteen days nor more than six months without benefit of suspension of sentence.
(2) If at the time of the commission of the offense the offender is under the jurisdiction and legal custody of the Department of Public Safety and Corrections, or is being detained in any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house, or detention facility, the offender shall be fined not more than one thousand dollars and imprisoned with or without hard labor without benefit of parole, probation, or suspension of sentence for not less than one year nor more than five years. Such sentence shall be consecutive to any other sentence imposed for violation of the provisions of any state criminal law.
|fiBattery of a police officer has three elements: the intentional use of force upon a police officer, without the consent of the officer, when the offender knows or should reasonably know that the victim is a police officer acting within the performance of his duty. State v. Ceaser, 02-3021 (La.10/21/03), 859 So.2d 639.
At trial, Escude testified that, on March 29, 2012, he was working security at the Caddo Correctional Center. He was the security deputy in housing unit Alpha, which is the intake housing unit. He was working alone that day.
Escude identified Defendant in the courtroom and stated that, on the day of the incident, he saw Defendant at the window of a cell yelling and attempting to communicate with someone in the day room that was a level below the upper unit. Escude testified that Defendant knew he was working in that particular housing unit because he had been there for five days in the week before the incident and Escude was wearing his uniform.
Escude testified that he used a key to open Defendant’s door to speak to him about the disturbance, informing Defendant that he had lost his recreation privileges for that evening. Escude stated that Defendant began cursing him, denying he was yelling, and then spit on the floor at Escude’s feet. Escude told him to get dressed for lockdown. Escude further testified that Defendant used very profane language to tell him he was not going to the lockdown cell and also threatened him by stating, “Come in here, you put your hands on me, bitch, I’ll beat your m.... f... .ing ass.” Escude testified that Defendant continued his profanity throughout the entire rest of |7the encounter until they reached the lockdown cell. Escude stated that he was following about 10-15 feet behind Defendant to maintain a safety or reactionary gap between them in the event *489 Defendant decided to become aggressive toward him.
Escude further testified that, when they reached the lockdown cell, he noticed there was already another inmate in that cell. He used a key to open the locked cell; and, as the door swung open, Defendant, being in close proximity to him, lunged aggressively at him. Escude stated that he instinctively defended himself, grabbing for Defendant’s arm in an attempt to place him in a straight arm bar takedown. Defendant swung at him several times and then ran away. Escude stated that Defendant struck him on the right side of his face, but he did not realize it at the time because of his increased adrenaline. Es-cude stated that, several minutes after the incident was over, he noticed his nose was extremely sore and it remained that way for several weeks. He also stated that he did not consent to Defendant hitting him.
Escude testified that he called the emergency response team (“ERT”) of the CCC to come to the housing unit and ordered the inmate who was already in the cell to get out so that ERT would not think he was involved in the situation. The other inmate did leave the lockdown cell under Escude’s instruction. Meanwhile, Defendant had run to the top of a stairwell on the tier, where he assumed a prone position, but then ran back toward Escude to the cell, where he again assumed the prone position. Escude further testified that he had his mace ready to spray Defendant if Defendant became ^aggressive again. At that point, however, he determined that Defendant was no longer a threat to him and did not have to use the mace.
Escude testified that there are eight cameras in the housing unit for the security of the deputy and inmates. He stated that the standard procedure after an incident is to review the footage with the supervisors and that the footage was reviewed within 30 minutes of the incident. The footage of the incident was downloaded from the CCC system to a disk and provided to the Caddo Parish District Attorney’s Office.
Escude also testified that, when he downloaded the video, it played in real time and did not have any audio. The video shown in the courtroom at trial and narrated by Escude did not play in real time.[1] Defendant was identified as wearing green shorts and a white T-shirt, walking on the top tier of the facility to the last door at the top of the frame. According to the narration in the courtroom, the video showed Escude opening the door to the cell and then Defendant running past him. Defendant ran to a “safety” cell and got on the floor because Escude had called ERT by that time. ERT arrived and escorted Defendant out of the housing unit and to the medical area, which is standard procedure. Escude’s narration of the video did not describe any contact between the two men, although Escude testified that, when the Defendant lunged at him, he tried to “put him in a takedown” and that is when Defendant began swinging at him, trying to hit him.
| gDefendant took the stand in his own defense and testified that a different chain of events occurred. Defendant stated that he was in his cell, talking to his “cellie,” when Escude kicked open his cell door, cursed at him and asked him why he was out of his cell. Defendant denied being out of his cell and claimed that, while he and Escude were arguing, Escude threatened him and put his hands on him. De *490 fendant further testified that, as instructed, he walked to the lockdown cell and, when they reached the cell, Escude swung open the door in his face and grabbed him by the throat. Defendant claimed he pushed Escude’s hands off him and then he hit Escude. Defendant further claimed that Escude did not call ERT and that the two of them were fighting. Defendant did not deny that, he hit Escude, stating, “I know I swung like two or three times.” Defendant claimed he was the first person to stop fighting and get on the ground and that, when he entered the lockdown cell vacated by the other inmate, Escude “sprayed me on my face with the mace.” Defendant claimed he had witnesses who would verify his version of the events, but no other witnesses testified on Defendant’s behalf.
The state was required to prove that Defendant committed a battery on Escude without Escude’s consent when it was reasonable for Defendant to believe that Es-cude was a correctional officer acting in the performance of his duty. Based on the testimony and evidence, the state was able to prove the essential elements of the charged offense.
Defendant failed to present any evidence to support his claim that he was acting in self-defense, and the video did not show him being choked by | ^Escude and did not show Escude spraying him with mace. Defendant’s self-defense theory was unsupported by anything other than his self-serving testimony. It is within the jury’s providence to determine the credibility of the witnesses, and the jury chose to believe Escude’s account of the events rather than Defendant’s. For these reasons, this assignment of error is without merit. Assignment of Error Number Two: The trial court erred by imposing an unconstitutionally harsh and excessive sentence.
Defendant argues that, because of his age, 21 years old at the time of sentencing, his sentence is excessive and, thus, nothing more than a purposeless and needless imposition of pain and suffering and a violation of his constitutional rights.
The state responds that Defendant failed to raise a contemporaneous objection to the excessiveness of his sentence; therefore, he is barred from raising the claim on appeal. The state contends that Defendant’s sentence is appropriate based on his criminal history and the facts and circumstances of the case.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 07-0805 (La.3/28/08), 978 So.2d 297. The articulation of the I,factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Landos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,-350 (La.App.2d Cir.8/13/08), 989 So.2d 267, writ denied, 08-2697 (La.9/18/09), 17 So.3d 388. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 *491 So.2d 259, writ denied, 08-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 07-0144 (La.9/28/07), 964 So.2d 351.
The second portion of the analysis requires a determination regarding the constitutional excessiveness of a sentence. A sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La. p.992);12 State v. Robinson, 40,983 (La. App.2d Cir.1/24/07), 948 So.2d 379.
The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Hardy, 39,233 (La.App.2d Cir.1/26/05), 892 So.2d 710. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert, denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. State v. Cook, supra.
La. R.'S. 15:529.1 provides, in pertinent parts as follows:
A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. ⅛ ⅝ ⅜ ⅝ ⅝ *
|1SG. Any sentence imposed under the provisions of this Section shall be at hard labor without benefit of probation or suspension of sentence.
The trial judge stated that Defendant’s sentencing range as a second felony offender is 2½ to 10 years. He conducted a very thorough sentencing hearing and articulated his reasons for the sentence imposed. The trial judge noted that Defendant was 21 years old at the time of sentencing and that was the only mitigating factor in the case. Defendant’s criminal history included some juvenile adjudications, an aggravated assault and a remand for custody.
The trial judge further noted that Defendant had assaulted his mother when he was 16 years old and had locked her out of her own house, threatening her -with a stick with nails in it. Defendant had two *492 more adjudications for aggravated assault that occurred on the same day; one involved Defendant’s use of a knife against his mother and the other an aggravated assault of another person.
Defendant’s adult record included distribution of cocaine, for which he was placed on probation. Multiple petitions to revoke his probation were filed by his probation officer; and, eventually, Defendant was ordered to serve two years at hard labor following the probation revocation. Defendant had other arrests and convictions, including an arrest for domestic battery with strangulation and resisting an officer, which charges were pending at the time of sentencing herein.
The trial judge believed that Defendant’s actions showed a total disregard for respect and authority and that he was unable to comply with 114the requirements and conditions of his probation, which led to it being revoked. The trial judge stated that, after carefully considering the factors found in La. C. Cr. P. Art. 894.1, he believed that Defendant’s behavior established a pattern that could not be ignored and found him to be in need of correctional treatment in a custodial environment. The trial judge stated that any lesser sentence would deprecate the seriousness of the crime.
Defendant was sentenced to eight years’ imprisonment at hard labor without benefit of probation or suspension of sentence. While this sentence is in the upper range for a second felony offender, the sentence is not excessive under the facts and circumstances of the case. Considering this Defendant, the crime and the harm done to society, this sentence does not shock the sense of justice. This assignment of error, therefore, is without merit.

ERROR PATENT REVIEW

An error patent is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence and can be considered on appeal. La. C. Cr. P. art. 920(2).

La. C. Cr. P. art. 930.8 Advice

At sentencing, the trial court did not fully advise Defendant of the time period within which to apply for post-conviction relief. The trial judge advised, “Under Article 930.8 Mr. Gage has two years to pursue any post conviction relief applications.”
The Louisiana Supreme Court has held that La. C. Cr. P. art. 930.8(C), which requires the trial court to inform a defendant of the | ^limitations period for filing an application for post-conviction relief, is supplicatory language which does not bestow an enforceable right on an individual defendant. State v. Brumfield, 09-1084 (La.9/2/09), 16 So.3d 1161; State v. Hunter, 36,692 (La.App.2d Cir.12/20/02), 834 So.2d 6. The trial court should have advised Defendant, and we now advise him by this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922. See State v. Pugh, 40,159 (La.App.2d Cir.9/21/05), 911 So.2d 898.

Illegally lenient sentence

We note that Defendant’s sentence did not deny him parole eligibility as required by La. R.S. 14:34.2(B)(2).
La. R.S. 15:301.1 provides:
A. When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the *493 provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.
B. If a sentence is inconsistent with statutory provisions, upon the court’s own motion or motion of the district attorney, the sentencing court shall amend the sentence to conform to the applicable statutory provisions. The district attorney shall have standing to seek appellate or supervisory relief for the purpose of amending the sentence as provided in this Section.
|1fiC. The provisions of this Section shall apply to each provision of law which requires all or a portion of a criminal sentence to be served without benefit of probation, parole, or suspension of sentence, or of any one of them, any combination thereof, or any substantially similar provision or combination of substantially similar provisions.
D. Any amendment to any criminal sentence as authorized by the provisions of this Section shall be completed within one hundred eighty days of the initial sentencing.
The trial court failed to impose the sentence for battery of a police officer without benefit of probation, parole or suspension of sentence. See State ex rel. Sullivan v. Maggio, 432 So.2d 854 (La.1983); State v. Everett, 05-214 (La.App.3d Cir.11/2/05), 916 So.2d 1210; State v. Moore, 96-1835 (La.App.lst Cir.6/20/97), 696 So.2d 657. La. R.S. 15:301.1 is self-activating and makes the denial of benefits self-operative. State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790; State v. Neely, 35,993 (La. App.2d Cir.5/8/02), 818 So.2d 829.

CONCLUSION

For the foregoing reasons, the conviction of Defendant, Brandon Lee Gage, is affirmed. Defendant’s sentence is amended to reflect that it is to be served without benefit of probation, parole or suspension of sentence and, as amended, is affirmed.
CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.

. The copy of the video provided to this court appeared to play in real time. Defendant can be seen standing next to Escude at the door of the lockdown cell; and, when Escude opened the door, Defendant lunged at him and began striking out with his fists.