818 So.2d 829 (2002)
STATE of Louisiana, Plaintiff-Appellee,
v.
Bernie James Thomas NEELY, Defendant-Appellant.
No. 35,993-KA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 2002.
*830 John Michael Lawrence, Indigent Defender Board, for Defendant-Appellant.
Richard Ieyoub, Attorney General, James A. Bullers, District Attorney, Michael A. Pitman, Assistant District Attorney, for Plaintiff-Appellee.
Before NORRIS, C.J., and BROWN and GASKINS, JJ.
NORRIS, Chief Judge.
Bernie Neely appeals his sentence of 20 years at hard labor as excessive.[1] For the following reasons, we affirm the sentence.

Facts
On February 5, 2000, Neely was alone with his six-week-old son, Kyle Neely. Around 3:00 p.m., because the baby was crying and throwing up his food, Neely shook Kyle so violently that he stopped breathing. Shortly after this incident, the mother of the infant, Judith Sammons, called Neely to check on Kyle; lying, he told her everything was alright. At 5:00 p.m., Neely called Ms. Sammons' mother, Rhonda Cade, to come over and check on the infant; she did so, and believed the infant appeared fine. He failed to disclose to her that the baby had stopped breathing or that he had vigorously shaken him. *831 Approximately one hour later, Neely's mother and his step-father came to the house, and Neely told his mother that he had dropped Kyle. Alarmed at the condition of the child, because of his shallow breathing and discoloration of the chest, Neely and his parents took Kyle to Willis-Knighton Bossier Health Center. Neely's mother performed CPR on the child on the way to the hospital. Upon questioning by the medical staff at Willis-Knighton, he lied and told the medical staff, as well as a detective who had arrived at Willis-Knighton, that he had accidentally dropped the baby, approximately seven hours earlier.[2] The child was airlifted to the Shumpert Medical Center Pediatric Intensive Care Unit. The child was placed on life support, suffering from shaken baby syndrome; he died from these injuries five days later, on February 10, 2000.
The autopsy performed by the Bossier Parish Coroner's office revealed that Kyle's death was a result of having been severely shaken. An expert of "shaken baby death syndrome" in St. Louis, Missouri was consulted as well; on June 13, 2000, this expert concurred with the Bossier Parish Coroner's Office, and ruled that the death was a homicide due to shaking.
On June 14, 2000, Neely was arrested for first degree murder. He waived his Miranda rights and confessed to shaking his infant son "several" times "really hard" because Kyle would not stop crying. Neely said that Kyle stopped breathing after he had shaken him, so he tried to "blow air into his mouth." Panicking at this point, Neely called Ms. Cade, who thought the baby looked fine. His confession was videotaped; in this videotape, Neely demonstrated how hard he shook the baby. On July 31, 2000, the Bossier Parish Grand Jury indicted Neely with second degree murder of his son. On August 7, 2000, Neely pled not guilty. On May 8, 2001, Neely pled guilty to manslaughter, pursuant to a plea agreement in the 26th JDC. After a pre-sentence investigation, on August 27, 2001, Neely was sentenced to 20 years at hard labor, with credit for time served. He then filed a motion to reconsider sentence which was denied. Neely argues his sentence was excessive. This appeal follows.

Discussion
Neely's sole assignment of error is that the trial court imposed an excessive sentence of 20 years at hard labor with credit for time served for his manslaughter conviction. He urges that La.C.Cr.P. art. 894.1 provides reasons for a more lenient sentence of 10 to 12 years. Under this article, Neely urges that such a more lenient sentence applies to him due to the following provisions:
(23) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm.
(25) There were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense.
(28) The defendant has no history of prior delinquency or criminal activity or has led a law abiding life for a substantial period of time before the commission of the instant crime.
(29) The defendant's criminal conduct was the result of circumstances unlikely to recur.

*832 (31) The imprisonment of the defendant would entail excessive hardship to himself or his dependants.
(33) Any other relevant mitigating circumstance. (The child may have had a prior injury.)
The question on sentence review is not whether another sentence would have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Jones, 1999-2207 (La.1/29/01), 778 So.2d 1131. Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Taylor, 31,860 (La.App.2d Cir.2/24/99), 733 So.2d 72.
A trial court has broad discretion to sentence within the statutory limits. Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Green, 34,676 (La. App. 2 Cir. 5/9/01), 787 So.2d 505. This is particularly true when the offense involves violence against the victim's person. State v. Lanclos, 419 So.2d 475 (La.1982). Absent a showing of manifest abuse of that discretion a reviewing court may not set aside a sentence. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158.
Prior to imposing sentence, the district court reviewed a PSI report, letters from family and friends, and a defense-submitted sentencing memorandum which included a psychological report concerning defendant. The court noted that, at the time of sentencing, defendant was 21 years old. He had no criminal record as a juvenile or as an adult. Having reviewed the facts of the case, the court concluded defendant had no intent to kill, but he did commit a battery upon an infant which resulted in the child's death. The court also notified defendant he would not be eligible for parole until he had served 85% of the sentence.
On this record, we do not find constitutional error. A helpless infant is dead by the hands of the defendant. In a period of approximately seven hours, Neely never once sought medical attention for his son, despite his obvious awareness of the baby's injury through his phone call to Ms. Cade, apparently beseeching her to come and check on Kyle. He prevaricated to the victim's mother, the victim's grandmother, and his own parents regarding what he had done to his son. Moreover, Neely initially lied to the medical staff, as well as to the law enforcement about his actions. He confessed to the crime over four months after Kyle's death, and only after the medical proof mounted overwhelmingly against him.
The record indicates the court was aware of the mitigating matters to which defendant refers in his brief, including his age, lack of criminal history and immaturity. However, there is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, 394, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
*833 The defendant received a significant reduction in potential exposure to confinement through his plea bargain; the offense of conviction does not adequately describe defendant's conduct. The facts of the case show he committed the offense of second degree murder. La. R.S. 14:30.1A(2)(b). Thus, the trial court had great discretion to impose even the maximum sentence possible for the pled offense. State v. Black, 28,100 (La.App. 2d Cir.2/28/96), 669 So.2d 667. The sentence imposed is neither grossly disproportionate to the severity of the offense nor, under the totality of the circumstances, is it shocking to our sense of justice. There is no showing of an abuse of the district court's discretion. Therefore, the claim of constitutional excessiveness is without merit.
We have examined the record for error patent and found none.

Conclusion
For the foregoing reasons, Neely's conviction and sentence are AFFIRMED.
AFFIRMED.
NOTES
[1] During the sentencing hearing, the trial court failed to state that Neely's sentence was without benefit of probation or suspension of sentence, as required by La. R.S. 14:31 B. However, La. R.S. 15:301.1 A makes the denial of benefits self-operative. See, State v. Williams, XXXX-XXXX (La.11/28/01), 800 So.2d 790.
[2] Specifically, Neely told the detective that around 3:00 p.m. earlier that day, he was cradling Kyle in his arms and that the baby arched his back and kicked Neely's arm away, making him drop the baby. Neely said that when Kyle hit the floor, he stopped breathing, so he performed CPR on the child. Neely then stated that Kyle started breathing again and vomited at this point. Then the baby went to sleep but was making a snoring sound that Neely had not heard before. Neely never once called for medical help for his infant son.