Judgment rendered March 9, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,236-KA
No. 54,237-KA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                              Appellee

versus

KEUNTREL RAYSHUN KNIGHT              Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court Nos. 222,256 and 222,256-A

Honorable A. Parker Self, Jr., Judge

* * * * *

GILLEY & GILLEY                              Counsel for Appellant
By: Patricia A. Gilley
    Tristan P. Gilley

J. SCHUYLER MARVIN                          Counsel for Appellee
District Attorney

JOHN MICHAEL LAWRENCE
ANDREW JACOBS
RICHARD R. RAY
Assistant District Attorneys

* * * * *

Before PITMAN, COX, and O'CALLAGHAN (*Pro Tempore*), JJ.

**PITMAN, J.**

Defendant Keuntrel Rayshun Knight appeals the imposition of his sentences of 35 years at hard labor after a guilty plea to a charge of manslaughter and 12 years at hard labor after a guilty plea to a charge of attempted manslaughter. For the following reasons, we affirm his convictions, amend his sentences and, as amended, affirm.

## FACTS

On July 30, 2017, at 1:00 a.m., Reese Williams, Sr. ("Williams"), drove with his two children to the home of their mother, Nicorya Chisley, in Bossier Parish, Louisiana. Williams entered the house, but left the children in the car parked in Chisley's driveway. Chisley was home with Defendant, her boyfriend of two weeks. An altercation occurred, and Defendant, who was armed, fired his gun five times and shot Williams twice in the torso while he was in the house. Williams ran outside; Defendant fired one shot outside of the home. That bullet struck five-year-old Reese Williams, Jr. ("Reese"), who was sitting in his car seat, and killed him. Williams survived.

Defendant was charged by bill of information with attempted second degree murder of Williams, in violation of La. R.S. 14:27 and La. R.S. 14:30.1, Docket No. 222,256-A, and by indictment with the second degree murder of Reese, in violation of La. R.S. 14:30.1(A)(1), Docket No. 222,256. On January 22, 2020, a Bossier Parish assistant district attorney ("ADA") filed a motion for joinder of causes so that the two cases could be tried together. The motion was granted.

The trial was set for January 27, 2020, but on that day, discussions were held and Defendant was offered a plea agreement whereby the ADA

would reduce the charges to attempted manslaughter and manslaughter in exchange for a guilty plea. Defendant's attorneys believed that a cap was to be placed on the amount of time Defendant would be required to serve if he pled guilty to the charges, but this discussion was never placed on record, and the ADA claimed that stipulation had never been made.

The transcript of the guilty plea, with both Patricia Gilley and Tristan Gilley representing Defendant, states as follows:

MR. GILLEY:     The State's tendered an offer in exchange for a guilty plea. There would be an amended charge of Manslaughter and Attempted Manslaughter. And those would be run concurrently. The Judge, we order a PSI [presentence investigation].

THE COURT:     All right. Is Mr. Knight prepared to take that amended.

MR. GILLEY:     We're going to enter a guilty plea.

MS. GILLEY:     With the understanding that there would be a PSI and-

THE COURT:     And the Court would share that PSI with you and with the District Attorney and then we would sentence Mr. Knight in accordance with that.

MS. GILLEY:     Your Honor, at this time would you be in a position to say-put a cap on what you would expect.

THE COURT:     I don't put caps. They put caps on.

MR. RAY:     No. The State would object to any cap on this. That's not been the offer. That's never been the offer.

THE COURT:     Yeah, they put caps on. We've had discussions, but those discussions, of course, are off the record. And so, that's where we are.

MR. GILLEY:     And, Your Honor, you would, review any sentencing memorandum we would file.

THE COURT:     A sentencing memorandum? I would be happy for you- - I've had sentencing hearings, so I'm open to those. You've been with me for those-Well, nine of my 17 years here-
                      . . .

-and know how we proceed in this courtroom.

MR. GILLEY:       Yes, Your Honor.

THE COURT:        All right, where are we, counselors?

MS. GILLEY:       Your Honor, I believe that Mr. Knight has decided to go ahead and take the plea offer.

. . .

MR. RAY:          Yes. Yes, Your Honor. . . . I guess what we're going to do is under docket number 222,256 we will amend Second Degree Murder to Manslaughter, which the amended Revised Statute will be 14:31. And then under 222,256A the Attempted Second Degree Murder, I guess, the attempt is already in it, so that's 14:27 is the Attempt and then Manslaughter is, again, 14:31.

During the district attorney's ("DA") statement of the facts of the case, Defendant admitted that there were fewer than seven shots fired and that at least one shot fired outside the house resulted in the death of the minor child. After the guilty plea colloquy, Defendant pled guilty to both charges and did not reserve any nonjurisdictional errors or objections for appeal.

On June 27, 2020, after the PSI was provided to the trial court, a sentencing hearing was held at which Defendant's attorney called many people to the stand, including Defendant, in an attempt to show mitigating factors for the court to consider in sentencing. After Defendant's attorney presented over an hour of statements, the state presented Williams and his mother, Patricia Williams, to make victim impact statements. Defendant was not allowed to ask these witnesses any questions. The victims asked the court to impose the maximum sentence of 40 years. The state also argued that the trial court should impose maximum sentences.

3

The trial court stated that it had reviewed the PSI and considered factors found in La. C. Cr. P. art. 894.1. It considered mitigating and aggravating factors associated with Defendant, including his young age at the time of the commission of the crime and that it was his first felony offense. It also discussed his home life and his attempts to engage in a professional career. It further noted that Defendant was the father of three children of his own. It considered that the crime involved the use of a handgun and that very serious consequences resulted from the poor decision Defendant made in using that gun.

Having considered all of the pertinent facts, the trial court sentenced Defendant to 35 years for the manslaughter of Reese and 12 years for the attempted manslaughter of Williams, to be served concurrently. It failed to state that the sentences were without benefit of probation or suspension of sentence.

On July 22, 2020, Defendant's attorney filed a motion to reconsider sentence pursuant to La. C. Cr. P. art. 881.1 in Docket No. 222,256-A, the case concerning attempted manslaughter, but did not file a separate motion in Docket No. 222,256. Defendant alleged that the DA and/or his ADA were directly or indirectly guilty of prosecutorial misconduct resulting in due process violations, which affected not only the sentence imposed, but the overall fairness of the judgment in the case, including the sentence. Defendant also alleged that the DA and ADA threatened Chisley, a key witness in the murder case, by telling her that she would end up in prison with her boyfriend if she did not change her story as to the facts of the fatal incident. He further alleged that the DA and ADA conspired with Williams and his mother, Patricia Williams, to threaten Chisley to change her version

4

of the facts. He also alleged that the trial court had entered into an agreement with him that it would not impose a sentence of more than 20 years, that it did not keep its word and denied having entered into the agreement and that it violated other rights of Defendant by not allowing him to rebut adverse information in the PSI and letters written by members of the Williams family. Further, he alleged that the trial court prevented him from asking Chisley any questions at the sentencing hearing, which violated his right to due process. He also claimed that the sentences imposed were constitutionally excessive.

On July 30, 2020, the trial court denied the motion for reconsideration of sentence. A motion for appeal was filed in Docket No. 222,256-A, but the order was granted in Docket No. 222,256. The motion for appeal in Docket No. 222,256-A raised issues pertaining only to the sentences imposed. Because the sentences for both crimes were imposed at the same time, this court will review the sentences imposed for both manslaughter and attempted manslaughter.

On August 11, 2020, the DA filed a rule to show cause why Defendant's attorney should not be held in contempt for filing the motion to reconsider sentence that contained insulting, abusive, discourteous or false language constituting direct contempt accusing the DA, ADA and even the trial judge of engaging in serious breaches of professional conduct. Defendant's attorney filed a motion to dismiss the rule to show cause, and a hearing was held on September 23, 2020, at which the trial court denied the motion to dismiss the rule. However, it also recused itself from any further proceedings since a portion of the motion to reconsider sentence, upon

5

which the rule for contempt was based, concerned allegations related to the trial judge.

A hearing was held on September 30, 2020, according to the minutes of the record, which are the only evidence that a second hearing was held on the matter by a different judge. The minutes of that hearing state that Defendant's attorney was found to be in direct contempt and was ordered to pay sanctions of penalty in the amount of $100 within seven days. She refused to pay and was booked into the parish jail, where she remained for a short period of time until someone else paid the $100. No appeal was taken from the contempt ruling, and there is no evidence of the contempt hearing except in the minutes of the record of the appeal currently before this court.

Defendant appeals his sentences.

## DISCUSSION

On appeal, Defendant argues that the trial court breached its agreement to sentence him to no more than 20 years for the crimes to which he pled guilty; and, thus, his guilty pleas are constitutionally infirm, and he should be allowed to withdraw his guilty pleas and proceed to trial. He also argues that the DA and ADA violated his constitutional and statutory rights, as well as their own prosecutor's code of professional conduct, and that the sentences must be revoked. He further argues that the sentences imposed of 35 years and 12 years, to be served concurrently, are constitutionally excessive.

### Violation of a Plea Agreement

Defendant argues that the trial court breached a plea agreement to sentence him to no more than 20 years and that this breach rendered his guilty pleas constitutionally infirm and subject to withdrawal.

6

The state argues that the record clearly contradicts the claim that the trial court breached any plea agreement. It points out that nowhere in the extensive record of the proceedings, which included numerous pretrial and post-trial hearings, is there any confirmation of a cap on sentencing of 20 years and that it would never agree to a cap in this situation. It argues that Defendant received a considerable benefit from the plea bargain agreement when the charges were reduced from second degree murder of the juvenile and attempted murder of Williams to manslaughter and attempted manslaughter, respectively. It also argues that the sentences were left to the discretion of the trial court, that the trial court had the benefit of a PSI, that the trial court gave reasons for the sentences imposed and that the sentences were within the sentencing range of the pled offenses.

A guilty plea is invalid when the defendant is induced to plead guilty by a plea agreement or by what the defendant reasonably believes is a plea agreement and the terms of the bargain are not satisfied. *State v. Hall*, 637 So. 2d 645 (La. App. 2 Cir. 1994), *writ denied*, 94-1373 (La. 9/30/94), 642 So. 2d 868.

Where a defendant's misunderstanding is not induced by or attributed to representations made by the district attorney or the trial court, there are no grounds for withdrawal of the plea. *State v. Hall*, *supra*. In the absence of fraud, intimidation or incompetence of counsel, a guilty plea is not made less voluntary or less informed by the considered advice of counsel. *Id*. A misunderstanding between counsel and defendant does not have the same implication as a breached plea bargain and does not render the guilty plea not "free and voluntary"; nor is dissatisfaction with the sentence or expected sentence after sentencing sufficient to invalidate a guilty plea if the plea was

entered into on advice of competent counsel and there is no indication that a plea agreement had been broken. *State v. Banks*, 49,767 (La. App. 2 Cir. 4/15/15), 163 So. 3d 895, *citing State v. Senterfitt*, 00-415 (La. App. 3 Cir. 9/27/00), 771 So. 2d 198, *writ denied*, 00-2980 (La. 9/28/01), 798 So. 2d 107.

The transcript of the guilty plea hearing shows that no one other than perhaps Defendant's counsel was under the impression that a plea bargain agreement limiting his sentence to 20 years had been made, and the record does not explain how counsel remained confused. When the attorney broached the subject with the trial court, it clearly stated that there would be no cap placed on the sentences. The trial court stated that it did not take that action, and the ADA protested that he would never enter into such an agreement under the circumstances of this case. Even though these assertions that no such 20-year cap existed were made in open court, Defendant pled guilty to the reduced charges of manslaughter and attempted manslaughter while knowing that a PSI had been ordered and that the trial court would consider the PSI and any sentencing memoranda filed by his attorney when determining his sentences.

Defendant's misunderstanding was not induced by or attributed to representations made by the ADA or the trial court. There was no fraud or intimidation which induced him to plead guilty. There are no grounds for withdrawal of the guilty pleas, which were freely and voluntarily given.

For these reasons, this assignment of error is without merit.

*Alleged Misconduct of the DA and ADA*

Defendant argues that the DA and ADA violated his constitutional and statutory rights, as well as the prosecutor's code of conduct. He bases

this assertion on two separate arguments, the first of which is that the DA's office intimidated or threatened Chisley, the mother of the deceased child.

The state responds to Defendant's argument by asserting that there is no evidence, inside or outside the record, that indicates there was a violation of Code of Professional Conduct Rule 3.8, concerning special responsibilities of a prosecutor. Further, it contends that the same allegations were adjudicated at the contempt hearing and were found to be without merit. That judgment was not appealed and is now final.

La. C. Cr. P. art. 881.2 concerns review of sentence and states in pertinent part as follows:

> A. (1) The defendant may appeal or seek review of a sentence based on any ground asserted in a motion to reconsider sentence. The defendant also may seek review of a sentence which exceeds the maximum sentence authorized by the statute under which the defendant was convicted and any applicable statutory enhancement provisions.
>
> (2) The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea.

The issue of alleged intimidation by the DA and ADA of the deceased child's mother was raised by Defendant's motion for reconsideration of sentence and cannot be reviewed in the context of this appeal currently before our court. In response to the motion to reconsider sentence in the trial court, the DA filed a rule to show cause why Defendant's attorney should not be held in contempt because the motion contained insulting, abusive, discourteous or false language constituting direct contempt. The contempt hearing was held after the notice of appeal was filed. There is no transcript of the hearing or a signed order. The only reference to the contempt hearing in the record is found in the minutes. Apparently, the trial court, which

9

heard the contempt matter, agreed that the allegations against the DA and ADA were insulting, abusive, discourteous or false since Defendant's attorney was found to be in contempt. No appeal was taken from the decision to hold her in contempt; therefore, this issue is not currently before this court for review.

The second argument of this assignment of error is that the DA's office interfered with Defendant's ability to call witnesses at his sentencing hearing. He asserts that he was not allowed to confront his accusers when the victims made their impact statements to the trial court regarding the sentences to be imposed. He also argues that the trial court denied him the right to confront the witnesses against him when it did not allow him to question Williams or his mother, the grandmother of the deceased child, when they gave their impact statements.

Defendant argues that by denying him the right to confront witnesses against him in the sentencing phase and refusing to allow him to develop the mitigating circumstances important to his sentencing, the DA and ADA violated Rule 3.8 of the Rules of Professional Conduct, entitled "Special Responsibilities of a Prosecutor," which provides, in pertinent part, as follows:

> The prosecutor in a criminal case shall:
>
> (d) Make timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows, or reasonably should know, either tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal[.]

La. C. Cr. P. art. 881.3 concerning the record on review of the sentence states as follows:

> In reviewing a sentence, the appellate court may consider the record of the case which shall include any evidence or relevant information introduced at preliminary hearings, hearings on motions, arraignments, or sentencing proceedings, and any relevant information included in a presentence investigation report filed into the record at sentencing. In order to preserve confidentiality, in appropriate cases, the court may order that the presentence report, or any portion thereof, be held under seal.

The sentencing hearing transcript shows that Defendant was allowed to present many witnesses who testified to his good character and nature. Further, Defendant's mother was called to testify that she and the deceased child's mother had a good relationship after the incident. Defendant was allowed to make a statement to the trial court expressing his remorse for what had occurred and the result of his actions. He presented a statement indicating that he was acting in self-defense.

The U.S. Constitution requires that a guilty plea be recorded showing that the defendant was informed of and waived his constitutional right against compulsory self-incrimination, the right to a trial by jury and the right to confront one's accusers. *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State v. Russell*, 46,426 (La. App. 2 Cir. 8/17/11), 73 So. 3d 991, *writ denied*, 11-2020 (La. 2/10/12), 82 So. 3d 270. In a felony case, a court shall not accept a plea of guilty without first addressing the defendant personally in open court and informing him of, and determining that he understands, inter alia, the right to confront and cross-examine the witnesses against him. La. C. Cr. P. art. 556.1(A)(3).

In this case, the trial court informed Defendant of his constitutional right to confront his accusers before his decision to plead guilty. The trial

11

court specifically told him that by pleading guilty he waived the rights provided by *Boykin*, *supra*. The safeguards provided by the *Boykin* colloquy protect defendants during the guilty phase of trial and do not apply to situations when victims are making their impact statements at sentencing. Defendants are not allowed to confront their victims when they have already pled guilty to the crimes against them.

Defendant pled guilty to the charges of manslaughter and attempted manslaughter. The testimony presented by Defendant at the sentencing hearing raised no substantial issues regarding the free and voluntary nature of the guilty plea. There is no proof in the record that the actions of the DA and ADA violated Defendant's statutory or constitutional rights or the Rules of Professional Conduct by withholding exculpatory evidence at the guilty phase of the trial or at sentencing.

For the foregoing reasons, this assignment of error lacks merit.

*Excessive Sentence*

Defendant claims his sentences of 35 years and 12 years, to be served concurrently, are excessive and that the trial court failed to take into consideration the mitigating circumstances he attempted to develop at the sentencing hearing, but was prevented from doing.

The state argues that the sentences imposed by the trial court are fair and are not excessive and withstand constitutional review.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the

article.  *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18), 254 So. 3d 1208.  The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. Meadows*, *supra*.  The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation.  *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Meadows*, *supra*.  There is no requirement that specific matters be given any particular weight at sentencing.  *State v. Meadows*, *supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351.

Second, the court must determine whether the sentence is constitutionally excessive.  A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.  *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980).  A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.  *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, *supra*.

As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Woods*, 41,420 (La. App. 2 Cir. 11/1/06), 942 So. 2d 658, *writs denied*, 06-2768, 06-2781 (La. 6/22/07), 959 So. 2d 494. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain and the offense involves violence upon a victim. *State v. Meadows*, *supra*; *State v. McKinney*, 43,061 (La. App. 2 Cir. 2/13/08), 976 So. 2d 802.

La. C. Cr. P. art. 14:31(B) provides that a person found guilty of manslaughter:

> [s]hall be imprisoned at hard labor for not more than forty years. However, if the victim killed was under the age of ten years, the offender shall be imprisoned at hard labor without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years.

La. C. Cr. P. art. 14:27(D)(3), which provides the penalties when a person is found guilty of attempted crimes, states that he:

> [s]hall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.

At the sentencing hearing, the trial court took notice of the information provided in the PSI, as well as other documentation which had been submitted to it for sentencing purposes. It stated that pursuant to the plea bargain agreement, it had the task of determining the length of the sentences. It also stated that it had reread the statutes related to conviction

and reread La. C. Cr. P. art. 894.1, setting forth the factors to be considered in sentencing. It noted that this was a very serious crime that resulted in the death of a young child and that the offender created a risk of death or great bodily harm to more than one person. Defendant utilized a dangerous weapon in the commission of the offense, and any reasonable person could have anticipated the consequences of these actions.

The trial court cited the PSI and stated that there were mitigating factors to be considered, including Defendant's young age and that this was his first felony offense. It considered Defendant's social history by stating that although Defendant's father was a convicted felon, his mother provided him with a good and stable home and encouraged him to do well in school. Defendant was a church member and worked in the medical community rendering assistance. He is the father of three children, one of whom he supports. Defendant expressed his remorse for his actions, which resulted in the death of the child.

After considering and discussing the factors found in La. C. Cr. P. art. 894.1 and the aggravating and mitigating circumstances, the trial court sentenced Defendant to 35 years for manslaughter and 12 years for attempted manslaughter, to be served concurrently. It failed to include that the sentences were to be served without benefit of probation or suspension of sentence.

According to La. R.S. 14:31, the maximum sentence for manslaughter is 40 years in prison; and the maximum sentence for attempted manslaughter is 20 years in prison. In sentencing Defendant to 35 and 12 years, the trial court greatly reduced the number of years to which Defendant could have been sentenced had he not agreed to accept the plea bargain agreement.

The sentences are not grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. They do not shock or offend the sense of justice.

For the foregoing reasons, this assignment of error is without merit.

*Error Patent*

We note that there is an error patent in the record. The trial court failed to state that Defendant's sentences are to be served without benefit of probation or suspension of sentence as provided in La. R.S. 14:31(B). That statute is self-activating and makes the denial of benefits self-operative. *State v. Williams*, 00-1725 (La. 11/28/01), 800 So. 2d 790; *State v. Neely*, 35,993 (La. App. 2 Cir. 5/8/02), 818 So. 2d 829.

Defendant's sentences are amended to reflect that they are to be served without benefit of probation or suspension of sentence and, as amended, are affirmed.

## CONCLUSION

The convictions of Defendant Keuntrel Rayshun Knight are affirmed. The sentences of Defendant are amended to include that they are imposed without benefit of probation or suspension of sentence and, as amended, are affirmed.

**CONVICTIONS AFFIRMED; SENTENCES AMENDED AND, AS AMENDED, AFFIRMED.**