Judgment rendered November 19, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,517-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

DON LEE JOHNSON                    Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 377,403

Honorable Ramona L. Emanuel, Judge

* * * * *

THE HARVILLE LAW FIRM, LLC          Counsel for Appellant
By: Douglas Lee Harville

JAMES E. STEWART, SR.               Counsel for Appellee
District Attorney

CHRISTOPHER S. BOWMAN
ERIC M. WHITEHEAD
Assistant District Attorneys

* * * * *

Before PITMAN, COX, and ROBINSON, JJ.

**PITMAN, C. J.**

Defendant Don Lee Johnson appeals his conviction for manslaughter, a crime to which he pled guilty, and his sentence of 20 years at hard labor without benefit of probation or suspension of sentence. He argues that he was intellectually incapable of waiving his rights and voluntarily confessing to the crime. He also argues that he received ineffective assistance of counsel when his attorney failed to file a motion to suppress the confession. For the following reasons, we affirm the conviction and sentence and instruct Defendant to file for post-conviction relief on the issue of ineffective assistance of counsel.

### FACTS

Defendant is a man of very limited intellectual ability with the mental capacity of a child of 10 to 12 years of age. Defendant was 21 years old and homeless in April 2020 when his sister, Samantha Hobbs, who lived in Vivian, Louisiana, asked him to live with her. Hobbs had a four-year-old son and a three-month-old infant son, A.S. Hobbs worked at a convenience store, sometimes as many as 12 hours a day, and she would leave the children in Defendant's care.

On May 1, 2020, Hobbs was at work, and Defendant was taking care of both children. While he was feeding the infant, the older child kept attempting to go outside. Defendant slammed the infant on the sofa twice before he ran to get the four-year-old at the door. He stated that he noticed white fluid coming from the infant's nose, but that he wiped it off and never mentioned the incident to anyone.

In the following days, the baby appeared to be ill. He quit eating and was sleeping a lot more than usual. When he started to run a fever and began

vomiting, Hobbs took him to the emergency room at North Caddo Medical Center on May 3. There were no visible signs of injury, and the doctor told Hobbs to take the child to his usual physician for a follow-up visit. On May 4, she took him to see Dr. Walker May, who told her the baby had a virus and to return if he did not get any better by the next day. A.S. had a fever of 102 on May 5, and Hobbs gave him Children's Tylenol at 9:30 a.m. His fever dropped to 98. At 2:30 a.m. on May 6, she fed the baby and changed his diaper and put him to sleep.

The next morning Hobbs's boss, Celeste, came to her house to ask if she could come to work early, and Hobbs told her she needed to first check on her baby. She went into the bedroom and found him blue and with foam coming from his nose. Celeste called 911, placed the baby on the floor and started performing CPR. The call was dispatched as a "deceased person" call; and when the emergency crew arrived, the baby was on the floor covered by a blanket.

An autopsy was performed and the coroner returned a cause of death as subdural hematoma and subarachnoid hemorrhage as a result of abusive head trauma caused by shaken baby syndrome occurring five days prior to death. The ensuing investigation ruled out Hobbs as the perpetrator because she had been at work on the day of the incident causing death and had taken her child to the doctor multiple times because she did not know what was wrong with him.

While the baby's death was being investigated, Defendant went to Arkansas to stay with his adoptive mother. On July 24, 2020, he was returned to Louisiana at the request of the investigators; and, after having

2

been read his Miranda warning and signing a waiver, he admitted to throwing the baby onto the sofa.

Defendant was originally charged with second degree murder on October 22, 2020, and he was arrested. On October 5, 2021, a hearing was held regarding the free and voluntary nature of his confession, and it was found to have been freely and voluntarily made. On January 4, 2022, a sanity commission was requested, and the trial court appointed Jennifer Russell, PhD, a licensed psychologist, and Joshua Sanderson, MD, a psychiatrist, to the commission.

The sanity commission report issued in May 2022 by Dr. Russell indicated that Defendant had received a certificate of completion from high school where he attended special education classes. He worked at a lumber yard and at a Tyson plant "hanging live chickens." His adoptive mother was consulted and stated that he had suffered from his mental disability his whole life and that he could not function without the assistance of someone else, that he was a kind boy who had never been in any trouble with the law and that he had been diagnosed with Asperger syndrome. She also told the psychiatrists and psychologists who interviewed him that he might not understand questions asked of him but that he would pretend he did and respond in a way that he thought they would want him to answer. The testing performed showed that he had an IQ of 67, which placed him in the first percentile when compared to others of similar age and within the "Extremely Low" range associated with intellectual disability.

Dr. Sanderson found that Defendant was unable to assist his attorney in his own defense because he could not demonstrate a factual or rational understanding of the nature of the proceedings against him. He stated that

3

"the evaluation supports a recommendation that [Defendant] be found unrestorable" and that "some of his cognitive and social deficits are permanent and will continuously result in difficulties with rational manipulation of information."

The sanity commission report found that Defendant was incompetent to assist in his defense or understand the charge against him but reached no conclusion as to his sanity at the time of the crime. Defendant was sent to the East Feliciana Forensic Facility for nine months, during which time he received instruction on the functions of court personnel and assistance with his mental health in hopes that he could be brought to a state of understanding. In February 2023, the sanity commission report was issued, which determined he understood the function of the judge, the district attorney, the defense attorney, the jury, the charge against him and the effect of a plea bargain agreement; thus, he was found competent to stand trial.

An amended bill of information was issued August 30, 2023, which reduced the charge against Defendant to manslaughter "without any intent to cause death or great bodily harm" when he committed second degree battery of the baby. The district attorney offered a plea bargain agreement wherein if he pled guilty, his sentence, which was potentially 10-40 years under La. R.S. 14:31(B), would be capped at 25 years.

Defendant pled guilty to manslaughter the day the amended bill was filed, and the trial court completed the *Boykin* examination and determined that his guilty plea was knowing, voluntary and without any coercion and the waiver of rights acknowledged. *See Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The guilty plea was accepted by the trial court.

On December 19, 2023, a sentencing hearing was held, and sentencing was deferred. On January 29, 2024, Defendant was sentenced to 25 years in prison at hard labor without benefit of probation, parole or suspension of sentence.[1] Defendant filed a motion to reconsider sentence and raised several issues related to his inability to function above the level of a 10- to 12-year-old, emphasizing that he had no intent to harm the infant, had no past criminal history, had no disciplinary problems in the past, that he lacked the mental capacity to be left alone and in charge of minor children, and that because of his disability, he would be unable to defend himself in prison or in most environments. For these reasons, he asked the court to reconsider his sentence and impose a lesser one, perhaps for time served.

At the hearing on the motion to reconsider sentence, Dr. Sanderson testified that he performs forensic evaluations of people of all ages with intellectual disabilities and autism. According to his testimony, Defendant, at the age of 21 when the crime occurred, had an IQ of 67. He noted that a person's functioning IQ remains relatively stable throughout his lifetime. He stated that his opinion differed from the report that found Defendant competent to stand trial and stated that he did not believe Defendant could be rehabilitated to the point of understanding the procedure and effect, i.e., he was "irrestorably incompetent." He also noted that he never evaluated Defendant for sanity at the time of the offense because "if I believe that someone doesn't understand . . . that would be unethical to get them to discuss their behavior and thoughts at that time."

---

[1] La. R.S. 14:31(B), manslaughter, states that the sentence is to be served without benefit of probation or suspension but does not include parole in that limitation.

5

Defendant's adoptive mother, Kay Johnson, testified that Defendant arrived at her home as a foster child at the age of six and turned seven a month later. He left her home in 2020, shortly before the death of the baby. She testified that he was bullied as a child but would not fight back or protect himself. She stated that she would never have left him to care for any children unless he had supervision and that she believed Hobbs placed him in a position for which he was not qualified. She also stated he was always appropriate when around children in the family and wanted to please everyone. She testified that when Defendant finishes serving his sentence, she would take him home and keep him there.

Defendant's sister, Linda Lyle, appeared at the hearing and testified that Defendant was never cruel or violent to anyone and that he was quick to help anyone in need, but that given his mental ability, she would never ask him to sit with any children without supervision because he was not capable of doing so. She stated that he cannot take care of his own hygiene and does not have the knowledge necessary to take care of children. She also stated that if her mother was unable to care for Defendant after he leaves prison, he could live with her.

The trial court considered the motion and on September 17, 2024, imposed a sentence of 20 years at hard labor with credit for time served.[2] It noted that although mental health services were not available through the Department of Corrections at that time, if they became available, Defendant

---

[2] The trial court's decision did not state that the sentence was to be served without benefit of probation or suspension of sentence as required by La. R.S. 14:31(B), and the sentence was not recorded in the minutes as required by La. C. Cr. P. art 871. There is no commitment order in the record.

should receive them. The court specifically gave him notice of the right to appeal and to pursue post-conviction relief. This appeal followed.

## DISCUSSION

*Guilty Plea*

Defendant argues that the trial court erred when it found his guilty plea was knowing and voluntary. He contends that his mental disability makes him susceptible to manipulation, and he cannot understand the abstract concepts that define the fundamental constitutional rights to which he was entitled as a criminal defendant. Further, he argues that it was undisputed that he lacked the capacity to assist in his defense until the sanity commission found that he could be tried. Dr. Sanderson testified that his disability is permanent and that he believed Defendant to be "irrestorable." For these reasons, Defendant contends that the trial court erred when it accepted his guilty plea and considered he entered it knowingly, intelligently and freely. He asserts that the trial court should reverse the conviction, vacate the sentence and remand for further proceedings.

The state argues that an unqualified plea of guilty waives all nonjurisdictional defects and precludes their review by appeal or post-conviction relief. It contends that the only reviewable issues in this case are the voluntariness of the plea and purported excessiveness of the sentence. In this case, Defendant pled guilty after he was deemed to have regained capacity and after a judicial determination of competency. The state argues that the colloquy met all requirements of the Louisiana Code of Criminal Procedure and *Boykin*, *supra*, and reflects that he understood the trial court's questions, the nature of the plea and penalty and was sufficiently informed

7

by counsel. Further, he voluntarily waived all rights associated with accepting the plea.

A guilty plea is invalid when the defendant is induced to plead guilty by a plea agreement or by what the defendant reasonably believes is a plea agreement and the terms of the bargain are not satisfied. *State v. Knight*, 54,236 (La. App. 2 Cir. 3/9/22), 335 So. 3d 502, *writ denied*, 22-00764 (La. 9/7/22), 345 So. 3d 426, *citing State v. Hall*, 637 So. 2d 645 (La. App. 2 Cir. 1994), *writ denied*, 94-1373 (La. 9/30/94), 642 So. 2d 868.

Where a defendant's misunderstanding is not induced by or attributed to representations made by the district attorney or the trial court, there are no grounds for withdrawal of the plea. *State v. Hall*, *supra*. In the absence of fraud, intimidation or incompetence of counsel, a guilty plea is not made less voluntary or less informed by the considered advice of counsel. *Id*. A misunderstanding between counsel and defendant does not have the same implication as a breached plea bargain and does not render the guilty plea not "free and voluntary," nor is dissatisfaction with the sentence or expected sentence after sentencing sufficient to invalidate a guilty plea if the plea was entered into on advice of competent counsel and there is no indication that a plea agreement had been broken. *State v. Banks*, 49,767 (La. App. 2 Cir. 4/15/15), 163 So. 3d 895, *citing State v. Senterfitt*, 00-415 (La. App. 3 Cir. 9/27/00), 771 So. 2d 198, *writ denied*, 00-2980 (La. 9/28/01), 798 So. 2d 107.

The due process clause of the Fourteenth Amendment protects an individual's right not to proceed to trial while legally incompetent. *State v. Taylor*, 49,467 (La. App. 2 Cir. 1/14/15), 161 So. 3d 963, *citing State v. Odenbaugh*, 10-0268 (La. 12/06/11), 82 So. 3d 215, *cert. denied*, 568 U.S.

8

829, 133 S. Ct. 410, 184 L. Ed. 2d 51 (2012). Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense. La. C. Cr. P. art. 641. Louisiana law presumes a defendant's sanity. La. R.S. 15:432; *State v. Holmes*, 06-2988 (La.12/2/08), 5 So. 3d 42, *cert. denied*, 558 U.S. 932, 130 S. Ct. 70, 175 L. Ed. 2d 233 (2009). Therefore, an accused bears the burden of proving by a preponderance of the evidence that he lacks the capacity to stand trial. *Id*. Although a trial court may receive expert medical testimony on the issue of a defendant's competency to proceed to trial, the ultimate decision of capacity rests with the trial court. La. C. Cr. P. art. 647; *State v. Holmes*, *supra*. A reviewing court owes the trial court's determinations as to the defendant's competency great weight, and the trial court's ruling thereon will not be disturbed on appeal absent an abuse of discretion. *State v. Anderson*, 06-2987 (La. 9/9/08), 996 So. 2d 973, *cert. denied*, 556 U.S. 1165, 129 S. Ct. 1906, 173 L. Ed. 2d 1057 (2009); *Taylor*, *supra*.

In this case, Defendant was deemed competent to stand trial and was presented with a plea agreement which greatly reduced his exposure to incarceration from a potential 40-year sentence to one capped at 25 years, which was then reduced to 20 years. The trial court performed the *Boykin* colloquy and determined that he had not been coerced by anyone to accept the plea bargain agreement. He had counsel present to assist him on the day he pled guilty, and the trial court determined that his guilty plea was knowingly and voluntarily given. We give great weight to the trial court's decision that Defendant was competent at the time of the plea, and we find

9

no abuse of discretion in the acceptance of that guilty plea. For the foregoing reasons, this assignment of error is without merit.

*Excessive Sentence*

Defendant argues his sentence is unconstitutionally excessive under the circumstances of this case and that it serves no purpose and shocks the conscience considering he had no intent to cause death or great bodily harm, he has the mental capacity of a 10- to 12-year-old and he is unlikely to engage in any future criminal conduct. He contends that the record on appeal does not support the harsh sentence and the trial court failed to establish that he deserved such a severe sentence. Given the fact that he lacked the intent to cause death or great bodily injury, coupled with his disability, Defendant argues the current sentence serves no purpose and is merely punitive. He seeks constitutional review of his sentence on the basis that 20 years at hard labor is excessive under the circumstances of this case and is nothing more than a purposeless and needless imposition of pain and suffering. For these reasons, he asserts his sentence should be vacated and this matter remanded for resentencing.

The state argues that the manslaughter guilty plea was entered into with an agreed-upon 25-year sentencing cap and that after all the hearings held on sentencing and resentencing, the trial court's sentence was informed and measured with all relevant considerations. It argues the sentence was not an abuse of the trial court's discretion nor was it disproportionate to the harsh crime committed. For these reasons the state contends that the conviction by guilty plea and the sentence should be affirmed.

Appellate review of sentences for excessiveness is a two-pronged inquiry. *State v. Benavides*, 54,265 (La. App. 2 Cir. 3/9/22), 336 So. 3d 114.

First, the record must show that the court complied with La. C. Cr. P. art. 894.1. The court need not list every aggravating or mitigating factor so long as the record reflects that it adequately considered the guidelines. *State v. Benavides*, *supra*. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with the article. *Id*. No sentencing factor is accorded greater weight by statute than any other factor. *Id*. *See also State v. Marshall*, 55,470 (La. App. 2 Cir. 1/10/24), 380 So. 3d 140.

A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. *State v. Marshall*, *supra*. A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. *Id*. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. *Id*. The issue is not whether some other sentence might have been more appropriate but whether the district court abused its discretion. *Id*.

This court has repeatedly stated that where a specific sentence or a sentencing cap has been agreed upon as a consequence of a plea bargain, a sentence imposed within the agreed range cannot be appealed as excessive if that right has not been specifically reserved; however, we also have stated that when the right to appeal has been mentioned by the trial court during the plea colloquy, even though there is an agreed sentence or sentencing cap, the

11

defendant's sentence may be reviewed. *State v. Taylor*, 44,205 (La. App. 2 Cir. 5/13/09), 12 So. 3d 482.

In this case, when the trial court reconsidered the original sentence imposed, it reduced Defendant's sentence from 25 years to 20 years at hard labor, within the parameters of the plea bargain agreement. Further, it specifically granted this Defendant leave to appeal the decision and file for any post-conviction relief. Therefore, the reconsidered sentence is appropriately before this court, but we find no abuse of discretion in the trial court's imposed sentence. For these reasons, this assignment of error is without merit.

*Right to Appeal Ineffective*
*Assistance of Counsel on Direct Appeal*

Defendant raised the issue of ineffective assistance of counsel on appeal because his trial attorney failed to attempt to suppress his confession, which was given six weeks after the baby's death. He argues that he lacked the mental capacity to understand the consequences of signing his waiver of rights and of admission of the facts. Further, his attorney did not ask for a sanity commission report regarding his mental capacity until almost two years after the confession and after the trial court had already determined the confession to be voluntary. When it was determined that he could not participate in his own defense and did not understand the consequences of his earlier confession, the attorney did not file a motion to suppress the confession but counseled him to change his plea from not guilty to guilty of the lesser charge of manslaughter. Thus, he argues, he received ineffective assistance of counsel that violated his constitutional rights. He contends that the legal and factual issues related to this claim are sufficiently developed in

12

the appeal and that justice and judicial economy demand that this issue be addressed on direct appeal rather than through post-conviction relief.

The state argues that the issue of ineffective assistance of counsel for failing to file a pretrial motion to suppress the confession is not a reviewable issue. It contends that Defendant entered an unqualified guilty plea to the amended charge of manslaughter and did not plead guilty under *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because this provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. *State v. Galloway*, 54,704 (La. App. 2 Cir. 2/1/23), 354 So. 3d 919, *writ denied*, 23-00366 (La. 5/31/23), 361 So. 3d 467.

Both the Louisiana and federal constitutions guarantee a criminal defendant's right to the effective assistance of counsel. U.S. Const. art. VI; La. Const. art. 1, § 13; *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *State v. Brooks*, 94-2438 (La. 10/16/95), 661 So. 2d 1333; *State v. Bayles*, 53,696 (La. App. 2 Cir. 11/17/21), 329 So. 3d 1149; *State v. Turner*, 52,510 (La. App. 2 Cir. 4/10/19), 267 So. 3d 1202, *writ denied*, 19-00873 (La. 9/24/19), 279 So. 3d 386; *State v. Galloway, supra*.

Under the standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), adopted by the Louisiana Supreme Court in *State v. Washington*, 491 So. 2d 1337 (La. 1986), a reviewing court must reverse a conviction if the defendant establishes that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and counsel's inadequate performance prejudiced the defendant to the extent that

13

the trial was rendered unfair and the verdict suspect. *State v. Ball*, 19-01674 (La. 11/24/20), 305 So. 3d 90; *State v. McGee*, 18-1052 (La. 2/25/19), 264 So. 3d 445.

In a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient, committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment and evaluated from counsel's perspective at the time of the occurrence. *Strickland v. Washington, supra*; *State v. Paben*, 43,415 (La. App. 2 Cir. 8/13/08), 990 So. 2d 123.

Diminished mental or intellectual capacity does not in and of itself render a defendant incapable of a knowing and voluntary waiver of his rights. *State v. Tart*, 93-0772 (La. 2/9/96), 672 So. 2d 116, *cert. denied*, 519 U.S. 934, 117 S. Ct. 310, 136 L. Ed. 2d 227 (1996); *State v. Taylor, supra*. However, in the face of such deficiencies, the state must rebut the allegations despite the fact that the defendant ordinarily bears the burden of proving mental illness, but the critical factor is still whether the defendant was able to understand the rights explained to him and voluntarily give a statement. *Taylor*, *supra*, *citing Tart*, *supra*. Any mental incapacity is an important factor to consider in deciding the voluntariness of a confession. *Taylor*, *supra*, *citing State v. King*, 41,084 (La. App. 2d Cir. 6/30/06), 935 So. 2d 815, *writ denied*, 06-1803 (La. 2/16/07), 949 So. 2d 411. Voluntariness is determined on a case-by-case basis, under a totality-of-the-circumstances standard. *Taylor*, *supra*, *citing Tart*, *supra*; State *v. Manning*, 03-1982 (La. 10/19/04), 885 So. 2d 1044, *cert denied*, 544 U.S. 967, 125 S. Ct. 1745, 161 L. Ed. 2d 612 (2005).

This court declines to address the issue of ineffective assistance of counsel on direct appeal. We do not have the information needed to determine why counsel chose not to file a motion to suppress the confession or what the trial strategy was. This matter is more appropriately addressed by filing an application for post-conviction relief in the trial court so that an evidentiary hearing can be held and Defendant's attorney can explain why no motion to suppress the confession was filed despite the sanity commission's finding that he was incompetent more than two years after the criminal act and that the psychiatrist's opinion was that he was irrestorably incompetent. For this reason, the assignment of error is without merit. Defendant is instructed to file the application pursuant to La. C. Cr. P. art. 926.

*Error Patent*

We note that there is an error patent in the record. The trial court failed to correct the minutes after the motion to reconsider sentence was granted and same should be amended to state that Defendant's sentence is to be served without benefit of probation or suspension of sentence as provided in La. R.S. 14:31(B). That statute is self-activating and makes the denial of benefits self-operative. *State v. Williams*, 00-1725 (La. 11/28/01), 800 So. 2d 790; *State v. Neely*, 35,993 (La. App. 2 Cir. 5/8/02), 818 So. 2d 829.

## CONCLUSION

For the foregoing reasons, the conviction and sentence of Don Lee Johnson are affirmed. Defendant may seek further relief in post-conviction proceedings.

**AFFIRMED.**

15